---

**No. 13-5946**

---

United States Court of Appeals
for the Sixth Circuit

---

DIRTY WORLD ENTERTAINMENT, et al.

Defendants-Appellants

v.

SARAH JONES

Plaintiff-Appellee

---

On Appeal from the United States District Court
for the Eastern District of Kentucky

---

**BRIEF OF *AMICUS CURIAE* OPINION CORP. SUPPORTING
APPELLANTS AND URGING REVERSAL**

Marc J. Randazza
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive,
Suite 150
Las Vegas, Nevada 89135
(702) 420-2001

*Attorney for Amicus Curiae*

November 19, 2013

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 13-5946                    Case Name: Dirty World v. Jones

Name of counsel:  Marc J Randazza

Pursuant to 6th Cir. R. 26.1, Opinion Corp.
                                   *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No

---

CERTIFICATE OF SERVICE

I certify that on _____November 19, 2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                    s/ Marc J Randazza

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# Table of Contents

INTEREST OF THE *AMICUS CURIAE* .................................................................1

STATEMENT OF SOURCE OF AUTHORITY TO FILE BRIEF .........................1

SUMMARY OF ARGUMENT.............................................................................1

ARGUMENT .........................................................................................................5

   I.   SECTION 230 EXPRESSES A CONGRESSIONAL INTENT TO
       PROVIDE BROAD IMMUNITY FOR WEBSITE OPERATORS. ...........5

  II.   COURTS CONSTRUE SECTION 230 IMMUNITY BROADLY TO
       EFFECTUATE ITS SPEECH-PROTECTIVE PURPOSE. ......................6

 III.   THE DISTRICT COURT'S "ENCOURAGEMENT" STANDARD
       CONTRAVENES SECTION 230'S LANGUAGE AND PURPOSE. .....10

 IV.   NON-DEFAMATORY RESPONSES ARE NOT PART OF
       DEFAMATORY STATEMENTS AND DO NOT EFFECT IMMUNITY.
       ..............................................................................................................12

  V.   THERE IS NO EXCEPTION TO IMMUNITY ANALOGOUS TO
       CONTRIBUTORY INFRINGEMENT UNDER COPYRIGHT LAW.....13

 VI.   APPELLANTS ARE ENTITLED TO SECTION 230 IMMUNITY
       BECAUSE THEY DID NOT ACTIVELY PARTICIPATE IN
       CREATING OR DEVELOPING THE DEFAMATORY POSTS. ...........14

CONCLUSION ...................................................................................................15

# Table of Authorities

## Cases

*Almeida v. Amazon.com*, 456 F.3d 1316  (11th Cir. 2006) ...................................6, 7

*Batzel v. Smith*, 333 F. 3d 1018 (9th Cir. 2003) .......................................................6

*Blumenthal v. Drudge*, 992 F. Supp. 44, (D. D.C. 1998) ........................................6

*Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed 2d 1263 (1980) .............11

*Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008) ........................................................................................13

*Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) .............................................................................................................8, 9, 15

*Fed. Trade Comm'n v. Accusearch, Inc.*, 570 F.3d 1187 (10th Cir. 2009)...............9

*First Am. Title Co. v. Devaugh*, 480 F.3d 438 (6th Cir. 2007)...............................11

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929 (D. Az. 2008)...................................................................................................9, 10

*Green v. America Online, Inc.*, 318 F.3d 465 (3d Cir. 2003)...................................7

*Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010) ...................................................6, 7

*Nemet Chevorlet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 254 (4th Cir. 2009) .............................................................................................................7, 8

*S.C. v. Dirty World, LLC*, 2012 U.S. Dist. LEXIS 118297 (W.D. Mo., March 12, 2012)...........................................................................................................10

*Shiamili v. Real Estate Group of N.Y., Inc.*, 17 N.Y. 3d 281 (2011)................12, 13

*Universal Comm. Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007).................7

*Weinstein & Co. v. America Online, Inc.*, 206 F. 3d 980 (10th Cir. 2000) ..............7

*Zeran v. Am. Online, Inc.*, 129 F.3d 327 (1997).............................................5, 7, 10

ii

**Statutes**

47 U.S.C. § 230 ................................................................................. passim

## INTEREST OF THE AMICUS CURIAE

*Amicus Curiae* Opinion Corp. operates a website entitled

"pissedconsumer.com."  Pissedconsumer.com is an online forum where consumers

discuss negative experiences with products and services to warn other consumers.

Opinion Corp. operates under the majority interpretation of the

Communications Decency Act, 47 U.S.C. Section 230 ("Section 230"), which

protects it from liability from claims based on posts originating from third parties.

Here, the District Court incorrectly refused to apply Section 230 immunity and

permitted Appellee to pursue defamation claims against Appellants based on third-

party postings on Appellants' website that were not modified by Appellants.  Thus,

Opinion Corp. respectfully submits this *Amicus Curiae* Brief because if this court

affirms the District Court, Opinion Corp. (and many similarly-situated businesses)

may suddenly be subject to numerous claims based on third-party posts that would

be frivolous under current law.  Opinion Corp. has Appellant's consent to file.

## STATEMENT OF SOURCE OF AUTHORITY TO FILE BRIEF

Pursuant to Federal Rule of Appellate Procedure 29(b), Opinion Corp. has

concurrently filed a motion for leave for permission to file this Brief.

## SUMMARY OF ARGUMENT

Recognizing that the internet provides "unique opportunities for cultural

development, and myriad avenues for intellectual property . . . ," Congress enacted

Section 230, which immunizes website operators and other interactive service providers from causes of action or liability based on content originating with third parties. The immunity provided by Section 230 is unique because, unlike other media providers, an interactive service provider cannot be found to have published illegal material on its website that it did not "create," "author," or "develop."

In conformity with the Congressional policy reflected in Section 230, an overwhelming majority of courts interpret Section 230 immunity to bar claims based on any information originating with a third party and not substantially altered by the interactive service provider. Under this near consensus rule, immunity is not forfeited unless the interactive service provider actively participates in the creation or development of the specific illegal content posted by the third party. No Circuit Court has ever held that a website operator can forfeit immunity under Section 230 by using a certain name for its site, opening a forum on a specific subject, or posting after-the-fact and non-defamatory responses.

In this case, the District Court ignored and/or misapplied this standard by holding that Section 230 immunity is lost where a name or subject of a website generally "encourages" defamatory material. In this regard, the District Court decision is the furthest outlier decision on this matter, and is clearly inconsistent with virtually all other precedent on the issue, and is completely inconsistent with the Congressional intent enshrined in Section 230.

Appellants Dirty World, LLC Hooman Karamian a/k/a Nik Richie ("Richie") (collectively, "Appellants") operate a website known as "thedirty.com" where visitors may post information on any subject. (R. 76, Order on Motion for Summary Judgment, Page ID # 2, R. 64-2, Richie Affidavit, Page ID # 3.)

In 2009, a visitor to thedirty.com posted a message stating that Appellee, a teacher and Cincinnati Ben-Gals cheerleader, had "slept with every" Bengal player. (R. 76, Order on Motion for Summary Judgment, Page ID #'s 2-3.) A second post was made on thedirty.com, which implied that Appellee had sexually transmitted diseases. (R. 76, Order on Motion for Summary Judgment, Page ID #3.)

Appellants did not create or alter the posts about Appellee, and all of the material in the posts originated with a third party or third parties. (R. 64-2, Richie Affidavit, Page ID # 6.) However, Richie did post a response to this post, which stated, "Why are all high school teachers freaks in the sack? – nik." (R. 76, Order on Motion for Summary Judgment, Page ID # 3.)

Appellee sued Appellants for defamation based on the third-party posts. (R. 22, Second Amended Complaint.) Appellee initially argued that Richie's "freaks in the sack comment" was actionable. This comment could *theoretically,* result in liability – as it was at least authored by the defendant, but this claim was withdrawn. (R. 177, Motion for Summary Judgment, Page ID # 3, 16.)

3

The District Court twice denied motions by Appellants asserting Section 230 immunity, holding that immunity was forfeited because Appellants "encouraged" and "ratified" the defamatory posts "by reason of the very name of the site, the manner in which it is managed, and the personal comments of defendant Richie . . . ."[1]  (R. 64-1, 76, Page ID #10, 177, 210, Page ID #'s 10-11 Motions for Summary Judgment and Orders thereon.)

The District Court's holding contravenes the plain language of Section 230, which forbids website operators from being treated as a "publisher or speaker" of content originating from third parties.  Congress simply did not provide an exception for merely generally encouraging illegal (as well as legal) content.

In addition, the District Court's "encouragement" standard transforms Section 230 analysis into a content-based analysis of a website's name and subject. This approach is contrary to Section 230's speech-protective purposes and will chill website operators from using open forums on controversial subjects. Similarly, the District Court's "adoption" exception for non-defamatory responses to third-party posts also violates Section 230.  The statutory language simply does not allow an exception to immunity for after-the-fact responses that cannot logically be considered part of an already completed post by a third party.

---

[1]    The two motions were different because the first motion was filed prior to Appellee withdrawing any claim based on Richie's "freaks in the sack" comment. (R. 177, 210 at Page ID # 11, Orders on Motion for Summary Judgment.)

The District Court's reliance on Seventh Circuit *dicta* analogizing contributory copyright infringement to "encouraging defamation" is also misplaced.  Unlike defamation claims, copyright claims are exempt from Section 230 and protect affirmative rights.  By contrast, Section 230 is a statutory immunity that encourages the broadest possible *prohibition* on claims.

Because the District Court misapplied Section 230, its Orders denying Summary Judgment should be reversed.

## ARGUMENT

### I.  SECTION 230 EXPRESSES A CONGRESSIONAL INTENT TO PROVIDE BROAD IMMUNITY FOR WEBSITE OPERATORS.

In enacting Section 230, Congress expressed a clear intent to protect the free flow of information on the internet by "preserv[ing] the vibrant and competitive free market that presently exists for the Internet . . . ."  47 U.S.C. § 230(b)(3).  Section 230 achieves this goal by carving out a sphere of immunity from suit for providers of interactive computer services in connection with content on their websites created by others.  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (1997).  Specifically, 47 U.S.C. Section 230(c)(1) provides:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

An "information content provider" is defined by Section 230(f)(3) as "any person that is responsible, in whole or in part, for the creation or development of information provider through the Internet or any other interactive computer service."  Section 230(e)(3) further provides that "[n]o cause of action may brought and no liability imposed under any State or local law" that is inconsistent with Section 230.  47 U.S.C. § 230(c)(1) and (e)(3).

Read together, these provisions bar plaintiffs from bringing defamation suits against interactive computer service providers based on information that third parties create, develop and post on the provider's website.  *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (*quoting*, *Almeida v. Amazon.com*, 456 F.3d 1316, 1321 (11th Cir. 2006)).  This immunity reflects a unique policy whereby Congress "'decided not to treat interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing obscene or defamatory material written or prepared by others.'"  *Batzel v. Smith*, 333 F. 3d 1018, 1026 (9th Cir. 2003) (*quoting Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D. D.C. 1998)).

## II.    COURTS CONSTRUE SECTION 230 IMMUNITY BROADLY TO EFFECTUATE ITS SPEECH-PROTECTIVE PURPOSE.

"The majority of federal circuits have interpreted [§ 230] to establish broad federal immunity to any cause of action that would make service providers liable

for information originating with a third party user of the service." *See e.g.*, *Almeida v. Amazon.com*, 456 F.3d 1316, 1321 (11th Cir. 2006) (Section 230 immunity applied to right to publicity claim); *see also Zeran*, *supra*, 129 F. 3d at 329, 334, 335 (immunity applied to third party defamatory material); *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F. 3d 980, 984-985 (10th Cir. 2000) (immunity applied where information originated with a third party); *Green v. America Online, Inc.*, 318 F.3d 465, 468, 471 (3d Cir. 2003) (immunity applied where provider declined to take action against alleged hacker); *Universal Comm. Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) (immunity applied to website that allegedly made it easier to post allegedly illegal material); *Johnson v. Arden*, *supra*, 614 F.3d at 792 (immunity applied to third party defamatory statements).  The courts' broad interpretation of Section 230 immunity is consistent with Congress' recognition of the chilling effect that "the specter of tort liability would otherwise pose to interactive computer service providers given the prolific nature of speech on the Internet." *Nemet Chevorlet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 254 (4th Cir. 2009).

Applying these principles, courts nearly uniformly hold that Section 230 immunity is applicable unless the provider is an active participant in the *specific* post that is alleged to be illegal.  For example, in *Nemet*, an automobile dealership alleged that the website consumeraffairs.com "developed" allegedly fraudulent

7

posts about it by soliciting negative comments from users about businesses, then contacting them to encourage participation in class action litigation.   591 F.3d at 256.  The court held that the legal activity of soliciting participation in class action lawsuits did not destroy Section 230 immunity because the website did not actually contribute to the illegal nature of the posts.  *Id*. at 258.

The court in *Nemet* distinguished the Ninth Circuit case of *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008), on which the District Court relies.  In *Roommates*, the court held that Section 230 immunity was lost where an internet roommate matching service actively participated in potentially illegal posts by providing a questionnaire to participants that asked discriminatory questions, then *requiring* answers as a condition of posting the users' classified ads.  *Id*. at 1166.  In short – the users were corralled into specific responses, which were themselves discriminatory.  This is a narrow holding, which has logically defied expansion.  Significantly, the court expressly limited its holding to situations where the website "contributes materially to the alleged illegality" of the third party's post.  *Id*. at 1168.  This is because the term "development," as used by Section 230, refers "not merely to augmenting the content generally, but . . . materially contributing to its alleged unlawfulness."  *Id*. at 1167-68.  Thus, under *Roommates*, a website loses Section immunity only if it "directly participates in developing the alleged illegality . . ." and not simply by

"encourage[ing]" visitors "to provide *something* in response to a prompt. . . ." *Id.* at 1174, 1175 (italics in original).  The court also cautioned that "close cases . . . must be resolved in favor of immunity . . ." to prevent claims that a website operator merely "promoted or encouraged" illegal posts.  *Id*.

The District's Court's reliance on *Fed. Trade Comm'n v. Accusearch, Inc.*, 570 F.3d 1187, 1198 (10th Cir. 2009), is also misplaced.  In *Accusearch*, the defendant's website solicited and purchased legally protected confidential telephone records and sold them.  570 F.3d at 1191-92.  The Tenth Circuit held that Section 230 immunity was inapplicable because by paying for the illegally obtained information, the defendant "contribut[ed] mightily" to the illegal publication.  *Id*. at 1200.  Notably, the court distinguished the defendant's e-commerce site from message boards, which are the "prototypical service qualifying for [Section 230] immunity."  *Id*. at 1195.  Further, the court confirmed that a website operator develops illegal content "only if it somehow *specifically* encourages development of what is offensive about the content."  (italics added.)

Applying the majority approach, several District Courts have upheld immunity in cases similar to the instant case.  In *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 930 (D. Az. 2008), the plaintiff alleged that a third party posted defamatory information about him on a website called ripoffreport.com.  The court applied Section 230 immunity.  The court reasoned

9

that calling a website "Ripoff Report" encourages defamatory content, which may be ethically wrong, but that unless Section 230 is amended, immunity must apply where the material is "unequivocally provided by another party." *Id.* at 933.

In *S.C. v. Dirty World, LLC*, 2012 U.S. Dist. LEXIS 118297 ** 3 (W.D. Mo., March 12, 2012), the plaintiff sued Appellants in this case, alleging they were liable for an alleged defamatory third-party post on the dirty.com that referred to her as "slut."  The court held that Section 230 plainly applied because the post was "unilaterally drafted and submitted by a third party." *Id.* at **1.

## III.    THE DISTRICT COURT'S "ENCOURAGEMENT" STANDARD CONTRAVENES SECTION 230'S LANGUAGE AND PURPOSE.

By expressly forbidding any service provider from being treated "as the publisher or speaker" of any content "provided" by someone else, the statute could not be clearer in precluding liability for information originating with a third party. 47 U.S.C. § 230(c)(1); *Zeran*, 129 F.3d at 332.  Thus, the District Court has essentially re-written the statute by holding that immunity is lost by mere "encouragement" of defamatory material.

The District Court's expansion of Section 230 also conflicts with the well-recognized canon statutory construction known as *expressio unius est exclusio alterius*, which provides that "the mention of one thing" in a statute "implies the exclusion of another." *See First Am. Title Co. v. Devaugh*, 480 F.3d 438, 453 (6th

Cir. 2007) (applying canon of *expression unius est exclusion alterius*).  Section

230(f)(3) provides an exclusive list of activities sufficient to render a website

operator an "information content provider," which include only the "creation" or

"development" in "whole or in part" of the defamatory content.  Thus, mere

general "encouragement" of *potentially* defamatory content is necessarily excluded

from Section 230's limited definition of "information content provider."

       The District Court also provides no guidance regarding what criteria should

be applied to determine if a website name or subject "encourages" defamatory

posts.  If a website title as generic as "thedirty.com" is sufficient to "encourage"

defamation, then the list of names that could potentially "encourage" defamatory

content is as infinite.  Further, nothing in Section 230 permits courts to grant or

deny immunity based on the content of the website.  Thus, the District Court's

approach to immunity risks placing courts in the constitutionally repugnant

position of applying content-based legal rules.  *See Carey v. Brown*, 447 U.S. 455,

100 S.Ct. 2286, 65 L.Ed 2d 1263 (1980) (laws may not "accord preferential

treatment to the expression of views on one particular subject . . . .")

       The natural chilling effect of a name/subject based standard for immunity

will be especially difficult for *Amicus Curiae* here and others who provide forums

for consumer complaints.  If subject to after-the-fact determination as to which

names or subjects forfeit immunity, consumer complaint forums will suddenly be

at the mercy of litigation brought by companies seeking to silence all criticism. This is the precise result Congress sought to avoid in enacting Section 230. The more prudent rule is the bright-line majority rule, which holds that a website operator remains immune from liability for defamatory content posted on its website by third parties unless it is shown that the website operator actively participated in the "creation" or "development" of the *specific* defamatory post.

## IV.   NON-DEFAMATORY RESPONSES ARE NOT PART OF DEFAMATORY STATEMENTS AND DO NOT EFFECT IMMUNITY.

In *Shiamili v. Real Estate Group of N.Y., Inc.*, 17 N.Y. 3d 281, 285 (2011), a third-party user posted a defamatory comment about the plaintiff's business on the defendant's website. The defendant reposted the comments and accompanied it with a distasteful, but non-defamatory, illustration of the plaintiff. *Id*. In applying Section 230 immunity, the New York Court of Appeals reasoned that the non-defamatory illustration did not "develop" or "materially contribute" to the alleged illegality of the third-party content. *Id*. at 292-293.

The court's holding in *Shiamili* is consistent with Section 230, which does not provide an exception for after-the-fact statements that contain no defamatory material. To the contrary, one becomes an information content provider only through the "creation" or "development" of the defamatory content. Naturally, one cannot "create" or "develop" a complete statement that has already been posted by

12

someone else.  Thus, as set forth in *Shiamili*, after-the-fact posts by website operators cannot be held to constitute active participation in the illegal activity.

## V.    THERE IS NO EXCEPTION TO IMMUNITY ANALOGOUS TO CONTRIBUTORY INFRINGEMENT UNDER COPYRIGHT LAW.

The District Court's opinion also erroneously relies upon (and attempts to expand upon) *Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008).  In *Chicago Lawyers*, the court held that Section 230 precluded the plaintiffs from holding craigslist.org liable as a publisher of the allegedly discriminatory third party housing ads.  *Id*. at 671.  In *dicta*, the court noted that "information content providers" could be liable for contributory copyright infringement if their system is designed to help people steal music or other material in copyright.  *Id*.

*Chicago Lawyers* is an outlier in terms of its narrow construction of Section 230 immunity.  Further, the Seventh Circuit's analogy to contributory copyright infringement collapses upon an examination of Section 230's statutory language.  Section 230(e)(2) provides that Section 230 shall not "be construed to limit or expand any law pertaining to intellectual property."  By excluding intellectual property claims -- whether based on direct or contributory infringement -- Congress clearly expressed a policy favoring copyright rights over Section 230 immunity.  By contrast, Congress specifically provided that where a provider is not

"responsible" for the creation of the third party content "no liability may be imposed" for claims based on state law. By the same token, there is no exclusion for merely "contributing" to, rather than "creating" or "developing" content that might violate state law. Thus, in defamation cases, it is irrelevant that a website operator does not enjoy Section 230 immunity for contributory copyright infringement because, unlike defamation, a website *never* enjoys Section 230 immunity from any type of liability for copyright infringement.

In addition, the Copyright Act grants affirmative rights to pursue claims to enforce rights held by authors. Thus, it makes sense to broadly interpret the rights of copyright holders against alleged infringers, including imposing liability for indirect or contributory infringements. Conversely, because Section 230 provides protection *from* liability by expressly excluding vicarious liability, it makes sense to broadly interpret the protection to provide immunity unless the website operator is directly involved in the creation or development of the illegal content.

## VI.    APPELLANTS ARE ENTITLED TO SECTION 230 IMMUNITY BECAUSE THEY DID NOT ACTIVELY PARTICIPATE IN CREATING OR DEVELOPING THE DEFAMATORY POSTS.

It was critical to the District Court's ruling below that Appellants named their site "thedirty.com" and encourages posts on salacious topics. However, this evidence demonstrates only that Appellants were *generally* encouraging the discussion of provocative information – be it true or false. There is no evidence

14

that Appellants specifically requested information about Appellee, let alone that it specifically requested false information.

It was undisputed below that Appellants did not create or edit the defamatory posts. Appellants simply "encourag[ed] visitors to provide *something* in response to a prompt" and did not "directly participate" in *what is illegal* about the posts, which is that the false accusations against Appellee. *See Roommates*, 521 F.3d at 1174, 1175. Accordingly, Appellee failed to demonstrate that Appellants were responsible for the "creation" or "development" of the posts.

The fact that Richie posted *non-defamatory* responses to the defamatory third party statements does not alter this result. This is because what is defamatory about the posts has already been fully "created" and "developed." Thus, the responses are irrelevant to Appellants Section 230 immunity.

## CONCLUSION

This court should reverse the District Court because it misconstrued Section 230 in holding that Appellants were not immune from claims based on defamatory statements created and posted by third parties on their website.

/s/ Marc J. Randazza
Marc J. Randazza
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, Nevada 89135
(702) 420-2001
*Attorney for Amicus Curiae*

Dated: November 19, 2013

15

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(d) and 32 (a)(7)(B) because it consists of 3,400 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) because it has been prepared in a proportionally space typeface using Microsoft Word 2011 in 14-point Times New Roman font.

/s/ Marc J. Randazza_____
Marc J. Randazza
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, Nevada 89135
(702) 420-2001

*Attorney for Amicus Curiae*

Dated: November 19, 2013

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2013 I caused the forgoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Vanessa Acosta-Nunez,
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive, Suite 150
Las Vegas, Nevada 89135
(702) 420-2001

17